Take your time setting up our next case is number 24-12456 United States v. Fabiano Santos-Segatto. Mr. Adler, may it please the Court, Andy Adler from the Federal Defender's Office on behalf of Fabiano Santos-Segatto, in this illegal reentry case brought in 2023 was untimely because Mr. Santos-Segatto was found more than five years earlier. That conclusion is compelled by three basic and undisputed points. First, this Court has repeatedly held that, quote, immigration authorities may find non-citizens under 1326A. Second, USCIS, United States Citizenship and Immigration Services, is one of our nation's immigration authorities. And third, USCIS discovered Segatto, his illegal status, no later than 2016 when they sent him a letter reflecting that very fact. Now we think that ends the case. The government's only argument, as we understand it, is that USCIS, as a matter of law, cannot find non-citizens at all under 1326A because only the criminal investigators within DHS can do so. That argument has no basis in law, not in the text of the statute, not in any canon of construction, and not in a single decision by any court in any jurisdiction in this country. What did the, this case proceeded to a bench trial, right? Yes. So what did, what did the factual stipulation given to the district court for purposes of the trial say about the ability of USCIS to refer matters for criminal prosecution to other arms of DHS? So I'm happy to answer that question, although we think it is irrelevant because our position is that once USCIS itself found him, that is, the key fact in this case is in paragraph 24 of the joint stipulation, and it is quoting the text of the letter that USCIS itself sent him saying, we understand that you are, quote, in the United States and plan to adjust your status. We think that is a dispositive fact because it shows when they found him. However, paragraph 25 indicates they send the letter to the consular's office in Brazil which indicate the interview should go with the person who's in Brazil. Yes Your Honor, so that, I think this would be a different case if we didn't have a letter reflecting USCIS's own interpretation of the I-130 petition. In a case where we have, a trier of fact has to decide how to interpret an I-130 petition, then there's maybe a disputed fact there, but here we know that USCIS understood him to be in the United States. In other cases, if you check the consular affairs box, maybe that indicates he's abroad, but here he also checked that he was living in Deerfield Beach, he had entered without inspection, and that is why USCIS understood him to be here and sending his wife's attorney a letter. Was the, was the I-130 form completed this time, wasn't still in the process of being completed? If you go back to the Palomino case, you know, I-130 petition, it indicated the petition was not complete, therefore you cannot say it was not reasonable diligence. So why can we not say it here? Your Honor, we're not making a reasonable diligence argument in this case. Palomino Garcia was all about whether USCIS should have learned earlier than they did based on the procedures in place. We are not making that argument. We're not saying USCIS should have found out any earlier. We're just saying that once they went through their procedures and actually discovered it, that that is, he is found. They know he's here. His status is illegal. He is found. Even though the process is not complete? The I-130 process is not complete, but they know he's here. They sent him a letter saying, you are here, we know you intend to. Let me ask you a question, Mr. Adler. Yes. Did they know that he had illegally reentered? So number one, we don't think they had to know that. That isn't my question. Yes, we think that they definitely knew that because in paragraph 23 of the Joint Stipulation, it reports that the I-130 petition reported his correct alien registration number. And so USCIS had his- In and of itself, would that- Yes, because- Just let me finish my question if I can, Mr. Adler. Does that statement alone yield the conclusion that he had entered illegally? Well we have direct- Or would they have to do something more in order to establish that he had entered illegally? If you're asking whether he entered illegally, we know that he did from paragraph 23, 24, the form says that he entered without inspection. But is that the same thing as saying that he had entered the United States illegally? Couldn't he have entered without inspection and still it would not be an illegal entry? Or are you saying as a matter of law, every entry without inspection is illegal? I'm not sure, Your Honor, but- He could have entered without inspection and still enter illegally. So I don't think paragraphs 23 and 24 answer the question of whether the re-entry was an illegal re-entry as opposed to there was a re-entry. And if that's right, then were they required to do more? Your Honor, the letter says that we know you're in the United States and plan to adjust your status, meaning you do not have a lawful status right now. In addition, they had his A-file. The only reason he had an A-file is because he was previously removed from the United States. And we know they had it because the I-130 form provided his correct alien registration number. So they absolutely knew that he was here illegally. That's all the cases require, the illegality of his presence, which, by the way, is not in the statute. The statute just says that at any time found here. And I'll also point out the government at no time is making the suggestion that you are making here. At no time has it suggested that USCIS did not actually know that he was here as late as 2016. If you look at their brief, the argument section of the brief, you look for the word consular, you look for the word Brazil, you will not find it. Their only argument is a legal argument in this case that USCIS cannot actually find it, non-citizens. And there is just no basis for that argument. They have to come to this court and explain to you why the phrase immigration authorities, which is in four published decisions of this court, does not include the United States Citizenship and Immigration Service and why it includes only a small subset of criminal investigators. Would you have a different position or would you have a more difficult position if there was a congressionally mandated wall of separation between the civil and criminal entities in DHS? And so, for example, for better or worse, right or wrong, the INA says there shall be no contact on criminal issues between the civil and the criminal branches or divisions of DHS and vice versa. And vice versa, no discussion of the criminal side from DHS to the civil side to get assistance. Our position would be the same, I think, because either way, the purely civil side is still an immigration authority. And the key point is that it's still part of the same agency. I mean, even if you had that sort of separation, it's one agency, but the premise does not exist here. There is no such statutory prohibition against the USCIS collaborating and talking to ICE and HSI. To the contrary, we see from the DHS regulation that the government filed in this court on Monday that they are collaborating all the time. And now USCIS is a full-blown law enforcement agency these days. And if you look, they have concurrent authority to investigate criminal violations of the  So there is no such separation. I think it would be a harder case. The question was a hypothetical, but the stipulation presented to the district court indicated that there are occasions, even back then, where USCIS refers matters to the criminal side for investigation, for example, in cases of fraud or national security, and I forget the third category. Public safety. That's paragraph 12 of the joint stipulation. We think it's very important because it shows that they have the ability to do that. The only reason they didn't do it in this case back in 2015 is because it wasn't a priority for them the way it is now. But that's not Segato's fault. He did everything he needed to do. He publicized his illegal presence twice to federal immigration authorities in a 10-year period. He receives a letter from them saying, we know you're here. We know you plan to adjust your status. He is entitled to rely on that written assurance from the government. And that goes to repose. That is the critical policy underlying statutes of limitations. And this court has repeatedly recognized, as the Supreme Court has, that criminal statutes of limitations must be liberally construed in favor of repose. He was entitled to rely on the letter, and when five years passed and he wasn't prosecuted, he was entitled to exercise, feel a sense of repose. Doesn't insulate him from immigration consequences, but criminal consequences, yes, it does. Thank you. Mr. Gantz. Good morning, and may it please the Court, Brendan Gantz for the United States. A straightforward application of Palomino-Garcia resolves this case. In Palomino-Garcia, the defendant's wife submitted an I-130 petition that disclosed the defendant's U.S. address and the fact of his prior deportation. The defendant argued on that basis that immigration authorities had actual knowledge, as well as constructive knowledge. And this court, evaluating whether immigration authorities either knew of or with the exercise of diligence typical of law enforcement authorities, should have known of his illegal reentry, held that the answer was no. As the court explained, what constitutes reasonable diligence is a factual question that requires inquiry into the agency's methods and procedures and tools at the time. And based on agency procedures at the relevant time, in 2002, INS typically would not investigate the information provided before a petition was complete. Here, as Judge Jones noted, we similarly have an I-130 petition that was never completed, and even if it had been completed, under revised agency procedures, USCIS would not have investigated or referred the petition for investigation of Santos Segato's illegal status. Thus, it is even clearer here than it was in Palomino-Garcia that the immigration authorities lacked knowledge that the defendant was here illegally. But this is not an apparent knowledge case or a should-have-known case, at least not as litigated by Mr. Segato. He's litigating this appeal on an actual knowledge basis. And there's no doubt that, based on the stipulation, that USCIS knew that he was in the country and that he was in the country unlawfully, right? To the contrary, Judge Jordan. I think it's absolutely clear on this record that USCIS did not have actual knowledge. And I would just point out- How could you say that given its letter to him? So the letter to him says, and I want to quote it because I think my colleague on the other side may have mistakenly quoted the beginning of it, the sentence from the stipulation that's he's quoting from that letter, says, quote, the petition indicates that the person- We're reading from what stipulation, what number? This is the factual stipulation before the district court, I believe. It's paragraph, yes, paragraph 24. The petition indicates that the person for whom you are petitioning is in the United States and will apply for adjustment of status. That's not actual knowledge for at least three reasons. First of all, the petition indicates you have told us. That's not we know. It's recognizing a statement by a third party about the whereabouts of Mr. Santos-Segato at the time that the petition was submitted. So it's simply recognizing that a statement has been made. And there's no case that would treat that as actual knowledge. It's completely inconsistent with Palomino-Garcia to treat that as actual knowledge. It would collapse the distinction- What about his application? His own application? I'm sorry, what about the application, Your Honor? Didn't he file an application as well as the petition filed by the wife? The application from 2005 simply included a U.S. address for him. It did not include, I believe, his A number. It did not include anything about the fact that he had illegally reentered. And so I think that's why they're relying mostly on this question of the notice that was sent in 2016. Also anything that's submitted in an application or petition goes to constructive knowledge, not actual knowledge. Is your argument that USCIS, as argued on appeal, did not have actual knowledge? Or is it your argument that USCIS, as a civil branch of DHS, can never find an alien in the United States for purposes of 1326? It's mostly both, Your Honor. What we say on page 13 of our brief is the immigration authority, 2023 is when immigration authorities gained actual knowledge. And to be clear, our position is that on this record and under these circumstances, USCIS's knowledge is essentially irrelevant. But we've never conceded that USCIS had actual knowledge. We argued below, the way that we argued it below was if you imputed everything USCIS knew here to the immigration authorities, the relevant immigration authorities who are responsible for investigating and prosecuting immigration violations, it still wouldn't be knowledge. And there are two other reasons why that statement from the notice doesn't constitute actual knowledge. The first is it's just recognizing a statement by a third party. The second is there are contrary indications in the petition as well. The petition requests consular processing. And as the district court noted, as the factual stipulation states and as common sense would tell you, when a defendant asks for his interview for the I-130 petition to be conducted in Brazil at the U.S. consulate there, the natural inference that somebody looking at that petition would draw is that the person is living in Brazil or will soon be living in Brazil. So there are contrary indications on the petition. That's the second reason there's no actual knowledge. The third reason is that for actual knowledge you need to know not only that the defendant is here, and the first two reasons go to why we didn't, you know, USCIS wouldn't have even known that he was here, but you also have to know of the illegal reentry. That's the language of Palomino Garcia. And there's absolutely nothing in that sentence from the notice sent to the defendant's wife that suggests that USCIS knew that he had illegally reentered. Help me with this. Your colleague got up and said, in connection with the question that we asked, quote, the government absolutely knew he entered illegally. When Mr. Adler was asked what the source of that knowledge would be, he pointed to the stipulated facts, and particularly to stipulated fact number 23 and 24. Did those stipulations establish the knowledge that he had entered illegally? Not that he had entered, but that he had entered unlawfully. The stipulated fact, I believe, was that he had entered without inspection. Now, typically someone who has entered without inspection is here illegally. That's typically. But there are certain mechanisms in immigration law for somebody who's entered without inspection to be able to adjust to lawful status. It's not necessarily, there's nothing in the petition that's, sorry, in the stipulated facts that suggests, and nothing to my knowledge that would establish, that just because you've entered with inspection, that necessarily means that you've illegally reentered. Help me understand what your argument is. I'm confused. I thought your argument was exactly what Mr. Adler said your argument was. I thought your argument was Congress created two separate pieces in the Immigration Service, USCIS, and they were doing benefit stuff, and they weren't involved in criminal stuff at all. And then you had another arm of Homeland Security that did criminal enforcement stuff. And that was the thrust of the argument. It didn't matter one whit whether USCIS knew or didn't have actual knowledge. It didn't matter whether they had constructive knowledge. That's irrelevant to the argument. Did you make a second argument, is what I'm trying to find out, that in fact this agency, USCIS, had neither actual nor apparent knowledge, and therefore you win anyway for a different reason? Because that's not the way I read the argument, but when I heard your response to Judge Jordan, you were kind of saying that. What is the argument of the United States? Yes, Your Honor. And the argument is as you framed it. Now, I was responding to Judge Jordan's question in that way because I want to make clear that we've never conceded that USCIS had actual knowledge. We argued below that even if you attributed all of USCIS's knowledge to law enforcement, it wouldn't be enough. But our argument is also that on the record here, and in the circumstances of this case, USCIS's knowledge is irrelevant. Because the relevant knowledge- So, just so that I'm clear, Mr. Gantz. Yes. You're saying that you argued here before this court two separate things, and one of the things you argued was USCIS had neither actual nor constructive knowledge, therefore he loses, as well as this agency had nothing to do with the criminal part, and therefore it doesn't matter what they knew or didn't know. Did you make both arguments, or only one? The government's argument, consistent with what the district court held below, is that USCIS's knowledge in these circumstances is irrelevant. I just wanted to make clear that the government has not conceded any factual points about USCIS. Right, but you haven't made an argument on that basis. Well, we argue that immigration authorities first found him in 2023. So I think that- No, but that's not the question. Did you argue in your red brief, and are you arguing today, that this agency that knew something within a certain time frame had no actual knowledge and no constructive knowledge? Is that your argument, and therefore you should win for that reason? Our argument- As opposed to the argument I thought you were making, and that Mr. Adler thought you were making, and I think Judge Jordan thought you were making, which was this is a separate agency. It's got nothing to do with criminal enforcement. It doesn't matter what they knew or didn't know, what they should have known or should not have known. The government's position is that USCIS's knowledge is irrelevant, yes. I think on this record, it's clear that USCIS also didn't have actual knowledge. I think the court could take that into account. The government's position is that it's irrelevant. Did the district court make any factual findings about USCIS's knowledge? I don't think so, Your Honor, because the district court made some comments about that, which I'm happy to discuss, but the district court clearly decided this case on the ground that USCIS's knowledge is irrelevant, because what matters is the criminal immigration authority's  If we disagree with you on that point, do we reverse? I think if you disagree with us on that point, you could still affirm on the ground that it's plain and obvious on this record that there was no actual knowledge by USCIS. How do we do that without any factual findings by the district court? That's why I started with that question. It's a bench trial. It's not a general verdict from a jury. Yes, Your Honor, but the factual record here is stipulated. I think the court could say as a legal matter that on the stipulated facts here, there's no actual knowledge for the three reasons I mentioned before. But I think what this court should instead hold is that the relevant knowledge is that You're saying that from, see what you're arguing, it seems to me, and I know it's in response to our question, I completely get that, is that those factual stipulated paragraphs can only be interpreted to draw inferences in one way, and I'm not sure you're right about that. I think you can make an argument that paragraphs 23, 24, et cetera, can lead to an inference that USCIS didn't know for the reasons you've given, the fact that it was sent to, and Judge Jones mentioned that it was sent to the lawyer in Brazil, that they asked for the consular interview, all of that. On the other hand, it can also be subject to a contrary inference that USCIS knew he had a United States address at the time, they had his alien registration number, they knew he had entered without inspection. So I'm not sure that we could decide as a matter of fact, we're not a fact-finding body generally, that those stipulated paragraphs lead to a lack of knowledge by USCIS. Maybe you can tell me why you think differently. I think the court could hold as a matter of law that the stipulated facts here don't establish actual knowledge for the reasons I've suggested. If I could, with my remaining time. Isn't actual knowledge usually a factual issue? Yes, and I think under Palomino-Garcia, the court could look at the facts here and say there's no actual knowledge. The defendant in Palomino-Garcia also argued actual knowledge, and in that case, he had submitted not only his U.S. address, but also the fact of his prior deportation. We have less than that, I think, on the facts here. If I could, with my remaining time, I'd like to... No, we're not quite finished with this issue, so just bear with me. We're looking for you to help us counsel. I understand. The district court made no finding about actual knowledge. You said it was irrelevant. Did the district court make any finding about constructive knowledge? Of USCIS? Yes, sir. No. And as to constructive knowledge, the court would have had to ask whether USCIS was exercising the diligence typical of law enforcement authorities, even at a time when USCIS was not operating as a law enforcement authority, and would have had no reason to discover the information at issue here. I think that's part of why I want to emphasize, with my remaining time, that the knowledge that's relevant here is the knowledge that is held by the people responsible for investigating and prosecuting immigration violations. This court has already interpreted the 1320... Let me ask you just to follow up on this again. Just bear with me, Mr. Gantz, for a minute. We'll give you the opportunity to say what you want to say, so just try and help me with my question. Yes, Your Honor. Is there any finding by the trial court judge about constructive knowledge? I don't believe there's a finding as to USCIS's constructive knowledge. Is that a fact-intensive question? I think that constructive knowledge can be a fact-intensive question. I think under Palmino-Garcia, again, the court could say the stipulated factual record here could not establish actual knowledge. Could we reach... I'm not asking about actual knowledge. Could we reach a conclusion on our own about constructive knowledge from these facts that were stipulated? I think so, based on Palmino-Garcia, that for the reasons I've stated, there was no reason... There was no actual or constructive knowledge for USCIS. And this court has already interpreted the 1326 statute of limitations liberally in favor of or opposed by adopting that constructive knowledge standard that turns on the exercise of diligence typical of law enforcement authorities. What the defendant is asking the court to do is to rewrite that standard in order to treat even an agency within the United States government that doesn't investigate or prosecute immigration violations as having relevant knowledge here. No court has held that the 1326 statute of limitations begins to run when a federal agency not responsible for investigating or prosecuting immigration violations learns information about or discovers an alien's illegal presence. And again, under that rule, courts would have to ask whether USCIS exercised the diligence typical of law enforcement authorities even when USCIS was not operating that way and had no reason to discover the information. If you go all the way back to the core line of cases from the 1990s that are cited in the brief, this court initially held that the 1326 statute of limitations begins to run when a defendant is arrested. And then in Scott and Clark, this court holds that constructive knowledge is sufficient if it's the government exercising the diligence typical of law enforcement authorities. So throughout that entire line, this court always has tied the phrase immigration authorities to law enforcement, to the particular people who are responsible for investigating and prosecuting the crime at issue. Doesn't part of Palomino-Garcia cut against you? The fact that the court was considering constructive knowledge by USCIS, the same entity involved in this case, indicate that knowledge by USCIS can be sufficient? No, Your Honor. I think that's a misreading of Palomino-Garcia. The question for decision in Palomino-Garcia, as this court said in page 1323 of the decision, was whether immigration authorities acted with reasonable diligence to investigate information the defendant's wife submitted in 2001 and 2002. But they focused on what USCIS did and what it was expected to do or not do, same agency as here. No, Your Honor. I disagree. The question was 2001 and 2002 when immigration authorities was INS. And that was the question for decision because Palomino-Garcia was indicted in 2008. Now there's some discussion of what happens in 2004 with USCIS, but at that point we're within the statute of limitations. So anything related to that is at best dicta. The reply brief notes that in its factual recitation, the court discussed some actions that the newly created USCIS took in 2004. But the court never determined that Palomino-Garcia was found in 2004, nor did it say anything about USCIS's actual knowledge. And again, it had no reason to reach that issue because 2004 was irrelevant to the statute of limitations with him having been indicted in 2008. Now the court did say in its discussion of the reasonableness of the government's procedures, it did make a comment that when USCIS had the information in 2004, sure enough, it investigated quickly. He ended up being indicted in 2008. But the court was not focused in reaching the question for decision on USCIS. It was focused on INS. And I think in that context, it's even more significant that the court called out the significance of the fact that this issue arose in the context of an I-130 petition and not a law enforcement investigation because the time period that we're concerned about is 2001 and 2002 when INS was still in charge. And so the fact that the court called out the significance, even in that context, of the fact that we weren't dealing with something that arose in a criminal prosecution, I think is especially significant now that the agencies have been split. There are new agency methods and procedures that are at issue that are discussed. The found-in case law is now going to depend on the structure of the immigration authorities in this country. And so the precedent could shift every administration. So if the new administration comes in and does something different than this administration, then we're going to have different found-in precedent? Well, I think the found-in, the phrase found-in, this court has always understood it has to be given a common sense construction that accords with what Congress was trying to do, which is why it was always tied to law enforcement because 1346. Where do you find that tie to law enforcement? Well, in throughout this course cases, again, going back to the court. We've never said that. Well, going back to CORE, this court initially held the statute of limitations begins to run when a defendant is arrested. So clearly, we're talking about law enforcement at that point. That precedent is no longer valid. Right. And so then in Scott and Clark, this court opens it up by adopting a constructive knowledge standard that depends on the diligence typical of law enforcement authorities. No, of immigration authorities. No, the phrase from Scott and Clark is the government has constructive knowledge when through the exercise of diligence typical of law enforcement authorities, it would... But that's on the constructive knowledge side, not on the actual knowledge side. The actual knowledge, the tie-in says federal immigration authorities. Am I wrong about that? The question is, as this court said in Palmino Garcia, whether the government knew or through... Whether immigration authorities knew or through the exercise of diligence typical of law enforcement. I think it would be strange to say, well, for constructive knowledge, if you had the typical of law enforcement, then we're going to impute that information to the government. But for actual notice, it would be anyone throughout the government, any information that's anywhere in the government's files. By way of analogy, if the hurricane had hit Florida and FEMA had provided some disaster relief assistance to Mr. Santos Segato and his family, I don't think anyone would suggest, and the cases certainly wouldn't suggest, that because FEMA is within DHS, that would mean that the government has actual knowledge in the statute of... If FEMA's not an immigration authority. But the phrase immigration authorities in this court's case law and in every court's case law that I know of has always been tied to law enforcement, which makes sense because the 1326 by its nature is a crime that involves avoiding detection by law enforcement. And so it makes sense to treat law enforcement as the relevant actor here. How about now? If this case arose today with the new regulations that you submitted earlier this week, different result? I think it's possible there would be a different result. I would urge the court to wait to decide that question. No, no, no, no. I'm not asking... We're not going to decide that question. I'm just saying different result because now USCIS can do criminal stuff. So now we're going to create a precedent that is already moot. It's already outdated because going forward, USCIS can now perform a number of criminal investigations and prosecutions. And so whatever we hold in this case, if we adopt your line between civil and criminal, it already means nothing because this administration has changed the rules of the game. And then what if the new administration at some point in the future changes the rules of the game again? And then we're supposed to change our precedent too? And it's just a ping pong so that the words found in depend in current state of administrative law? I don't think anything changes about this court's precedent and I don't think that the decision would be moot. Let me explain the first point first. Under Palomino-Garcia, we're simply asking this court to hold to that precedent which says it's agency methods and procedures that matter here. And the government has the burden to show whether someone was within the statute of  So the government would need to present evidence if this were contested about the relevant agency methods and procedures. That's always been the rule. My question is a pretty simple one. If tomorrow USCIS learned of someone like Mr. Segato, actually learned, no dispute whatsoever, they had everything. He presented himself at their offices and he said, I came in illegally, undocumented, without inspection, I'd like to get asylum, right? They document everything, whatever, whatever. And for some unknown reason, they don't prosecute him for six years. Does the statute of limitations run? I think it's possible that it would in a way that it's not possible.  Why possible and not just yes? Because we don't have a record of what the agency methods and procedures are going to be going forward. We know that USCIS has been delegated certain law enforcement authorities. I don't think anybody. So the rule of law depends on what the agency decides it's going to do or not do. That doesn't make sense. No, I don't think that's right. The agency methods and procedures only determine who counts as law enforcement within the purposes of 1326. Let me make, let me put you in a corner. The rules and procedures say when USCIS learns of an undocumented immigrant who is in the It shall, shall refer that individual for criminal prosecution through a criminal arm of DHS. That's the hypothetical. They don't, they do that. Nothing happens. Well, they don't do that, but they're supposed to do that. No prosecution for six years. Has the statute of limitations run? I think the answer probably would be yes. I think that would be closer to Scott, which is where this court held that the defendant was found in the United States because he made a full disclosure to investigating authorities, in that case, an ICE officer, about the fact that not only what was his name, but the fact that he had illegally reentered. If a defendant does that, then I think then the statute of limitations starts to run. Because at that point, the government is put to the choice. And I think that's the key point here. Mr. Santos-Segato argued below, the government had all this information and it simply chose not to prosecute me. But it only makes sense to impute that choice to the government if the agency that had the information had responsibility for investigating and prosecuting immigration violations. Not just referring? Well, it didn't have any responsibility to refer in this case. It had authority to do so? No. Well, I don't know about the question of authority. The government today thinks that most illegal immigrants in this country pose a danger to national security. Is that not the view of the current administration? I don't know the answer to that question. Come on. The administration says over and over and over again that illegal immigration is a serious threat to national security. That can only happen in the aggregate. That means that every person who is here illegally is part of the national security problem. So why could USCIS not have referred Mr. Segato to the criminal side as part of a national security problem? There's never been any contention in this case that USCIS's procedures regarding national security referrals would have been triggered here. There's nothing in the record to suggest that it would have been triggered here. We have no information about what those procedures are. The factual stipulation makes clear that... It says nothing about those procedures. The factual stipulation makes clear that USCIS would only refer in certain circumstances and there's never been a... Including national security. Including national security and there's never been a contention. And fraud. There's never been a contention here that national security or fraud was implicated. Now going forward, would the procedures be different? Again, I think it's possible and I think the agency methods and procedures that determine who is responsible for investigating and prosecuting these violations matter to the analysis under Palomino Garcia. There's no court that has ever held that because the government has information somewhere in its files about an alien, that necessarily means that the government is on constructive notice let alone actual... No court has also, you're right about that, but no court has ever held that there's the cleavage between civil and criminal in the immigration authorities that you're asking us to draw. Well, I think this court has taken you way beyond your time, so thank you very much for your assistance. We really do appreciate it. Thank you, Your Honor. Mr. Adler, tell us why Palomino Garcia doesn't help the government as much as it thinks. I am baffled that they're relying on that case. The entire presumption of that case is that the civil authorities, both in INS and then at USCIS, can find non-citizens. The court goes out of its way to note that the case arises in the context of an I-130 petition, not a law enforcement investigation. If the government was correct, if the government's position here was correct, Palomino Garcia would have simply said, well, ICE didn't get wind of him until 2008, the same year that he was prosecuted, case over. The fact that the government didn't make the same argument there that it's making here, I don't think that detracts in any way from the presidential value of that case, which proceeds on the assumption that USCIS actually found him in December of 2004 when it writes a memorandum to the file saying we know he's here illegally. It's on page 1322 of the opinion. Yes, it's in the factual background, but it is referenced again in the analysis where it says that they didn't run a status check until after the process was complete. That was part of their procedures. That was reasonable. That's when they found him, not earlier. That's what Palomino Garcia says. So it's completely inconsistent with the government's position in this case. I also think the government is incorrect, staying with the law here, that no court has rejected their position. There's a Fifth Circuit case called Gunnera that we cite in our initial brief. It's from 2007. The last paragraph of that decision says, rejects this idea that only, it's an INS case, but it's the same thing, because INS had a civil processing unit at their facility in Texas. That's who discovered him. Then the Fifth Circuit easily rejects the government's argument, well, they had no criminal investigatory authority. Fifth Circuit says, doesn't matter, INS is the immigration authorities. It's the same agency. And by the way, you could have simply referred it to the criminal folks in the same facility. So that case does reject the government's argument, even though it's an INS case. Do we, in the context of a bench trial, if we think there are insufficient findings of fact, do we remand? We wouldn't oppose that, Your Honor. And I think the government conceded multiple times there were no factual findings on either actual or constructive knowledge. I think this is just a straight up error of law, because the district court proceeded under the argument that the government is making here, that only the criminal investigators can make this finding. And Judge Marcus, I was as baffled at you listening to the government, because that is not the argument they made in their brief. Today, I heard them arguing, well, there's no knowledge, there's no constructive knowledge, there's no act. That's not their argument. And so now I'm sort of in this position of responding to the sandbagging by the government. I think the government has also lost credibility by not acknowledging the title of the executive Well, to be fair, part of the answer that Mr. Gantz gave was in response to questions from me about the facts and the records. So I don't think he ever affirmatively began the argument by saying no knowledge, no constructive knowledge. Fair point, Your Honor. However, he is affirmatively making that argument now, and his best response is, well, we didn't concede it. Yeah, but they didn't make it. And that's what I wanted to have you help me with. It seemed to me at first that he was arguing only one thing, which is what you directed your response to. And then when I went back to take another look at the brief and I listened to Mr. Gantz's argument, it sounded like he was making an additional argument that USCIS had no actual or constructive knowledge. And then we asked whether there were any findings by the trial judge on that issue, and the answer is no. And that's why I think Judge Jordan asked you the question, to the extent actual or constructive knowledge is still with us, would it be appropriate for us to remand for findings of fact? This is a bench trial. It's a very different story than if we had had a jury render a judgment in this case and say they've made the additional argument about actual and constructive. There was none. If that was right, then it might yield a different result than the result that would obtain from simply the argument that somehow Congress had created two separate and distinct silos between these arms of immigration service and they built a wall between it. Why shouldn't we remand is really the question. If that's an open issue and looks to me like there are really no findings on actual or construction, I certainly couldn't draw enough from, just speaking for myself, from what we have in front of us to answer the questions of actual or constructive. Should we remand on that? Again, we wouldn't oppose that, but we think the court should simply reverse the denial of the Rule 29 because we think the fact, paragraph 24 says, quotes the letter that CIS wrote and it says he is in the United States and plans to adjust his status. That is as clear as it gets. There's no precedent that requires you to lay eyes on the person. The problem that I have with the argument you make there is it doesn't seem to me that simply because of those words that he entered without inspection yields the conclusion, as we talked earlier, that he had entered illegally. It seems to me it is possible and you could point to things in the law that suggest you can enter without inspection and still not enter illegally. You understand what I'm saying? I understand, Your Honor. I believe the government conceded that typically that does mean you have entered illegally. It also means- But that's the, it's the adverb there, that's the- Sure, but then let's- Rob is in the detail, typically. He made the point and I think that he's right if you look at the underlying law here that you can enter without inspection and still have entered the United States lawfully. So you can't draw the conclusion inevitably from the fact that the stipulation said entered without inspection. That at least is the question I have for you. So Your Honor, as I said before, I don't know, but adjustment, plans to adjust your status. People with lawful status don't need to adjust. That's in paragraph 24 in the letter they sent to him. So that shows they knew he was here illegally. And Judge Shorten, I think you understand our position exactly. If you adopt the government's position here, then this court's precedent and the meaning of a federal statute is going to depend on an agency's regulations. That cannot possibly be right. So I think this is just a straight up error of law, reversal of the Rule 29. I do want to bring to the court's attention one final thing here, which is that Mr. Segato is not in this country anymore. He was removed because of this conviction. And this is not in the record, but I've spoken to his immigration lawyer, and he tells me that if we can get rid of this conviction, he's got a shot at getting back in here at some point. If not, so I think a remand would really sort of be a futile enterprise here. I just wanted to bring that to the court's attention. I mean, how would that work? They'd have to bring him back for, I mean, if there was additional evidence, if the district court decided to open up the record on these knowledge issues, you'd have to bring him back and parole him back into the United States for trial?  So I don't know, Your Honor. That would be a first for me. I think it's all the more reason to just reverse and get rid of this conviction, which was untimely. I mean, he brought himself to the attention of federal immigration authorities repeatedly, accurately. There's no misinformation. And I just want to say one more thing about Palomino Garcia. The government keeps pointing to the language of law enforcement. That is, Judge Jordan, correct. That's to describe the reasonable diligence standard. That is not describing the authorities that can find someone. And in the same sentence, it says immigration authorities with the diligence typical of law enforcement authorities. So we know they mean something different. So I think, again, just a straight-up error of law. The court can look to the Fifth Circuit's decision in Gunnera. There's another Fifth Circuit decision, Ramirez-Salazar dicta in that decision. And I think it's even more simple. Immigration authorities, United States Citizenship and Immigration Services, that's an immigration authority. That should be the end of the case, in our opinion. Thank you very much. Thank you both very much.